UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| SAMUEL FIELDS, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>RANDY WHITE, *Warden*, )<br>)<br>Respondent. ) | Civil No. 15-38-ART<br><br>**MEMORANDUM OPINION AND ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Petitioner Samuel "Sammy" Fields has filed a petition for a writ of habeas corpus. R. 6. In the eighteenth claim of his petition, Fields argues that he is entitled to relief because he received ineffective assistance of both trial counsel and appellate counsel. *Id.* at 84–87. Specifically, Fields makes two arguments: First, he argues that his trial counsel and appellate counsel were ineffective for failing to argue that the trial court should not have admitted Fields's incriminating statements. *Id.* Second, Fields argues that his appellate counsel was ineffective for failing to raise his sufficiency-of-the-evidence claim on appeal. *Id.* at 87.

Fields concedes that he procedurally defaulted both of these claims. *Id.* at 84–87. But he argues that this Court should nevertheless excuse his default because he can establish cause and prejudice as required under *Martinez v. Ryan*, --- U.S. ---, 132 S. Ct. 1309 (2012), and *Trevino v. Thaler*, --- U.S. ---, 133 S. Ct. 1911 (2013). As explained below, however, the Court cannot excuse Fields's procedural default on the claims alleging ineffective assistance of appellate counsel. And Fields's claim alleging ineffective assistance of trial counsel fails on the merits. Thus, the government's motion to dismiss Fields's eighteenth claim, R. 21, is granted.

I.

In April 1997, a jury found Fields guilty of burglary and the murder of Bess Horton. R. 6 at 5. The jury sentenced him to death. *Id.* His conviction was later overturned by the Kentucky Supreme Court, which granted him a new trial. *Id.* at 5–6. In 2003, a jury convicted Fields of murder and burglary for a second time, and Fields was again sentenced to death. *Id.* at 6.

Fields exhausted his appeals, and then filed a motion for the Kentucky state court to vacate, set aside, or correct his sentence pursuant to Kentucky Rule of Criminal Procedure 11.42. *Id.* at 6. The trial court denied his motion, and the Kentucky Supreme Court affirmed. *Fields v. Commonwealth*, 2013-SC-231, 2014 WL 7688714 (Ky. May 14, 2015). Fields then filed a petition for a writ of habeas corpus in this court. *See* R. 6. Therein, Fields alleges thirty ways in which his conviction violates the Constitution. *Id.* at 1–3.

The parties agreed to argue any procedural default claims before arguing the merits of the remaining claims. *See* R. 15 (minute entry order from telephonic status conference). Accordingly, the respondent, Warden Randy White, filed a motion to dismiss Fields's eighteenth claim, which the parties agree is procedurally defaulted. R. 21 (motion to dismiss); R. 6 at 84–87. However, Fields argues that his procedural default on this claim should be excused.

In the eighteenth claim, Fields asserts that he is entitled to relief because he received ineffective assistance of trial and appellate counsel in two specific ways. R. 6 at 84–87. First, Fields argues that his trial and appellate counsel were ineffective for failing to argue that the incriminating statements Fields made to police without a *Miranda* warning were inadmissible at trial. At trial, Officer Lindeman detailed the circumstances surrounding Fields's statement in his testimony. According to Officer Lindeman, he and his partner, Officer Green, were dispatched to Ms. Horton's rental property to investigate a burglary. R. 30-14 at 39. After a neighbor told

2

Officer Lindeman to look for Fields, Officer Lindeman saw Fields in Ms. Horton's house through a window. *Id.* at 39, 51. When Officer Lindeman entered the home, he saw blood in the house and heard movement coming from a bedroom. *Id.* at 53. Officer Lindeman entered the bedroom and saw Fields rummaging through some drawers. *Id.* at 54. Fields had blood on his shirt and pants. *Id.* at 55. Officer Lindeman told Fields to put his hands on his head. *Id.* at 54. Officer Lindeman then asked Fields, "What's going on? What are you doing?" *Id.* at 56. Fields responded, "Kill me, Ron [Lindeman], just kill me. I stabbed her, and I'm into it big time this time." *Id.* In response, Officer Lindeman asked, "Sammy, how could you do this? Why did you do this?" *Id.* Fields replied, "I don't know. I just did it. Kill me. I'm going to go to prison for the rest of my life." *Id.* At that point, Officer Green came into the room, and he and Officer Lindeman handcuffed Fields. *Id.* at 57. Fields now claims that these statements were inadmissible because he was entitled to a *Miranda* warning. Thus, Fields argues, his trial counsel was ineffective for failing to object to the admission of these statements at trial, and his appellate counsel was ineffective for failing to raise this argument on appeal. R. 6 at 85–87.

Second, Fields argues that his appellate counsel was ineffective for failing to argue on direct appeal that the evidence presented at trial was insufficient to sustain Fields's conviction. R. 6 at 83. At trial, counsel moved for a directed verdict on the basis that there was no forensic evidence linking Fields to the murder scene. *Id.* The trial court denied that motion. *Id.* Fields now contends that his appellate counsel was ineffective for failing to press this sufficiency-of-the-evidence argument again on direct appeal. *Id.*

II.

The parties agree that Fields's eighteenth claim for ineffective assistance of counsel is procedurally defaulted, as Fields failed to raise it in accordance with state court procedural rules.

3

R. 6 at 87; R. 21; *see Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991). Fields argues that the Court should nevertheless excuse the procedural default because he can establish cause and prejudice. R. 6 at 87 (agreeing that the claim is procedurally defaulted); R. 24 at 1 (arguing that the Court should excuse the default under *Coleman*). For the reasons discussed below, Fields's argument fails with respect to both his ineffective assistance of appellate counsel (IAAC) claims and his ineffective assistance of trial counsel (IATC) claim.

A.

Fields argues that his procedural default of his IAAC claims should be excused under the *Martinez/Trevino* exception. A court can excuse procedural default if the petitioner can show cause for not complying with the procedural rule as well as actual prejudice. *Coleman*, 501 U.S. at 750. Fields argues that his post-conviction counsel's failure to raise his two IAAC claims is cause to excuse his procedural default on these claims.

Generally, ineffective assistance of post-conviction counsel cannot constitute cause for procedural default because there is no constitutional right to post-conviction counsel at all. *Id.* at 752. In *Martinez*, however, the Supreme Court created a narrow exception to this rule. 132 S. Ct. at 1315. Specifically, the Court held that "[i]nadequate assistance of [post-conviction counsel] . . . . may establish cause for a procedural default of a claim of ineffective assistance at trial." *Id.* The Court was careful to limit its holding to this particular type of claim. The Court went on to say that "*Coleman* held that an attorney's negligence in a postconviction proceeding does not establish cause [for procedural default], and this remains true except as to initial-review collateral proceedings for ineffective assistance of counsel at trial." *Id.* at 1319. Thus, *Martinez* allows a petitioner to use an IAAC claim to show cause for procedural default of an IATC claim *only*. *Martinez* does not allow a petitioner to use ineffective assistance of post-conviction counsel to

show cause for procedural default of other types of claims, *e.g.*, IAAC claims.  In *Hodges v. Colson*, the Sixth Circuit recognized the limited exception *Martinez* created.  727 F.3d 517, 531 (6th Cir. 2013) ("The Court in *Martinez* purported to craft a narrow exception to *Coleman*.  We will assume that the Supreme Court meant exactly what it wrote[.]").  Thus, Fields cannot use ineffective assistance of post-conviction counsel as cause for his procedural default of his IAAC claims.

Fields argues that *Hodges* is inapplicable to this case.  Specifically, Fields points out that *Hodges* dealt with Tennessee procedures, and thus, in his view, *Hodges* does not necessarily apply in Kentucky because it provides a right to post-conviction counsel.  R. 24 at 9.  This argument misunderstands *Hodges*.  Indeed, the Sixth Circuit did not base its decision in *Hodges* on particular aspects of Tennessee law.  Instead, the Sixth Circuit based its decision entirely on the language in *Martinez*, which allows ineffective assistance of post-conviction counsel to provide cause for procedural default of only IATC claims.  *See Hodges*, 727 F.3d at 531.  *Martinez* did not create separate exceptions to the general rule in *Coleman* for states that have a right to post-conviction counsel.  *See generally Martinez*, 132 S. Ct. 1309.  Thus, Fields's attempt to maneuver around *Hodges* is unpersuasive.

Fields also argues that this Court should excuse his procedural default of his IAAC claims under the actual-innocence exception.  R. 24 at 24–26.  A habeas petitioner claiming actual innocence must "support his allegations of constitutional error with new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  The petitioner must also show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence."  *Id.* at 327.  Fields has not yet asserted any "new

5

reliable evidence," nor has he explained how such evidence would have likely changed the outcome of his trial. *See* R. 24 at 24–26. But Fields asked the Court to allow him to file supplemental briefing on the actual innocence issue if his *Martinez/Trevino* argument failed. *Id.* at 26. As such, the Court will dismiss the IAAC claims in Fields's eighteenth claim without prejudice. If Fields wishes to pursue his actual-innocence claim, however, he may amend his habeas petition to include his IAAC claims and file briefing on the actual-innocence exception by May 2, 2016.

B.

1.

Fields also argues that the Court should excuse his procedural default on his IATC claim. When the procedural-default analysis adds "nothing but complexity," however, the Court may skip that analysis altogether and proceed directly to the merits. *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010). After all, if a petitioner's claim fails on the merits, then there is no need to decide whether the claim would also fail due to procedural default. On the other hand, if the claim is a winner on the merits, then a court has no choice but to wade through the procedural-default analysis. Thus, the issue before the Court is whether Fields's eighteenth claim for ineffective assistance of trial counsel succeeds on the merits.

2.

Fields argues that his trial counsel was ineffective for failing to move to suppress the inculpatory statements that Fields made to Officer Lindeman. R. 6 at 85–87. Under *Strickland*, trial counsel's performance is constitutionally ineffective if it is both deficient and prejudicial. 466 U.S. at 687–88, 693. To succeed on the prejudice prong, Fields "must show a reasonable probability that . . . [his] motion to suppress would have succeeded had it been timely filed."

6

*McLavin v. Yukins*, 444 F.3d 713, 722 (6th Cir. 2006).  The question, then, is whether there is a reasonable probability that Fields's motion to suppress his statements would have succeeded if counsel had made it.

Police officers are not required to give *Miranda* warnings every time they interact with citizens.  *See Miranda v. Arizona*, 384 U.S. 436 (1966).  Instead, *Miranda* applies only to "custodial interrogation[s]."  *See id.*  A person is "in custody" for the purposes of *Miranda* when his "freedom of action [was] curtailed to a degree associated with formal *arrest*."  *Berkemer v. McCarty*, 268 U.S. 420, 437 (1984) (emphasis added).  A restraint on a person's freedom of movement alone is not sufficient to find that a person is "in custody."  *Maryland v. Shatzer*, 559 U.S. 98, 112 (2010).  Instead, *Miranda* custody only applies when the interrogation "exerts upon a detained person pressures that sufficiently impair his free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights."  *Berkemer*, 268 U.S. at 437.  Thus, in certain situations, a person's freedom of movement can be restrained, but *Miranda* still does not apply.  *See Shatzer*, 559 U.S. at 113 ("[T]he temporary and relatively nonthreatening detention involved in a traffic stop or *Terry* stop does not constitute *Miranda* custody.").  One of these situations is a *Terry* stop.  *United States v. Swanson*, 341 F.3d 524, 530–31 (6th Cir. 2003) ("The very nature of a *Terry* stop means that a detainee is not free to leave during the investigation, yet is not entitled to *Miranda* rights." (citations omitted)).  Under *Terry*, a police officer with a reasonable suspicion that "a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to investigate the circumstances that provoke suspicion."  *Berkemer*, 268 U.S. at 439 (internal quotations omitted).

7

The government argues that Officer Lindeman questioned Fields during a proper *Terry* stop, and thus did not need to Mirandize him.[1]  The government is correct.  Officer Lindeman received reports of a burglary, observed blood in the home and on Fields's clothes, witnessed Fields rummaging through drawers, and saw the victim's body on the bed with a knife through her head.  R. 30-14 at 53–57.  In circumstances such as these, *Terry* allows an officer to "ask the detainee a moderate number of questions to . . . try to obtain information confirming or dispelling the officer's suspicions."  *Id.*  That is exactly what Officer Lindeman did—he asked Fields what was going on and what he was doing, both of which were aimed at dispelling Officer Lindeman's suspicions.  Officer Lindeman then asked two follow-up questions based on Fields's response.  Thus, Officer Lindeman only asked Fields "a moderate number of questions" to obtain information to confirm or dispel his suspicions.

Fields seems to respond that his detention ripened into an arrest, and thus *Miranda* custody, because Officer Lindeman had his gun pointed at Fields while the officer questioned Fields.  But the fact that an officer has his gun drawn during a *Terry* stop, however, does not turn the stop into an arrest.  *See Houston v. Clark Cty. Sheriff Deputy John Does 1–5*, 174 F.3d 809, 814–15 (6th Cir. 1999); *United States v. Perdue*, 8 F.3d 1455, 1462–63 (6th Cir. 1993).  "The use of guns in connection with a [*Terry*] stop is permissible where the police reasonably believe the weapons are necessary for their protection."  *Perdue*, 8 F.3d 1455 at 1462 (quoting *United States v. Merritt*, 695 F.2d 1263, 1273 (10th Cir. 1982)).  Here, Officer Lindeman believed a burglary was in progress.  Thus, he did what any officer would do in that situation—he walked through the house

---

[1] Fields contends that *Terry* does not apply here because Officer Lindeman knew Fields, and *Terry* and *Berkemer* are limited to the "temporary detention of suspects *otherwise unknown* to the officer."  R. 35 at 11.  But *Berkemer* in fact states only that it must be a "particular person," not that this person must be unknown to the officer.  *Berkemer*, 268 U.S. at 439.  And this Court sees no reason to hold otherwise.  Any other interpretation of *Terry* would lead to the absurd result that, any time an officer does not know a subject, he needs only reasonable suspicion to question him, but if the officer knows the subject, the officer needs to have probable cause to question him.  Neither the case law nor the Constitution create any such rule.

cautiously and with his gun out. As he did so, he saw drops of blood and heard movement coming from a bedroom. R. 30-14 at 53–54. And when Officer Lindeman entered the bedroom, he saw Fields rummaging through drawers with blood on his shirt and the victim lying on the bed with a knife through her head. *Id.* at 54–55. Officer Lindeman reasonably feared that Fields could be armed and dangerous, so he kept his gun out, pointed at Fields. Under these circumstances, therefore, Officer Lindeman reasonably believed the gun was necessary for his protection. Thus, he was allowed to execute the *Terry* stop with his gun drawn. *Perdue*, 8 F.3d 1455 at 1462. As such, Officer Lindeman's use of the gun during the stop did not change it from a *Terry* stop to an arrest that required a *Miranda* warning.

In sum, Officer Lindeman's interrogation of Fields was a *Terry* stop that did not require a *Miranda* warning. *See Shatzer*, 559 U.S. at 113 ("[T]he temporary and relatively nonthreatening detention involved in a traffic stop or *Terry* stop does not constitute *Miranda* custody."); *Swanson*, 341 F.3d at 530–31 ("The very nature of a *Terry* stop means that a detainee is not free to leave during the investigation, yet is not entitled to *Miranda* rights." (citations omitted)). So there is not a reasonable probability that trial counsel's motion to suppress Fields's statement under *Miranda* would have succeeded. As a result, Fields cannot show that he was prejudiced by his trial counsel's failure to raise such a motion. *See McLavin*, 444 F.3d at 722. Thus, Fields's eighteenth claim for ineffective assistance of trial counsel fails on the merits, so this claim must be dismissed.

## CONCLUSION

Fields procedurally defaulted on the eighteenth claim of his habeas petition, R. 6 at 84–87. And the Court cannot excuse this default. Specifically, Fields cannot show cause to excuse the procedural default of his ineffective assistance of appellate counsel claims under *Martinez/Trevino*. And Fields's ineffective assistance of trial counsel claim fails on the merits.

9

Accordingly, it is **ORDERED** that:

(1)　The government's motion to dismiss Fields's eighteenth claim, R. 21, is **GRANTED**.

(2)　Fields's ineffective assistance of trial counsel claim in his eighteenth claim, R. 6 at 85–86, is **DISMISSED WITH PREJUDICE**.

(3)　Fields's ineffective assistance of appellate counsel claims in his eighteenth claim, R. 6 at 86–87, are **DISMISSED WITHOUT PREJUDICE**.  Fields may amend his habeas petition, R. 6, to include these claims by **Monday, May 2, 2016**, if Fields decides to pursue his actual-innocence claim.  If Fields amends his complaint, he shall file briefing on his actual-innocence claim simultaneously.

This the 30th day of March, 2016.

Signed By:
*Amul R. Thapar* AT
United States District Judge